1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8
9
10
11
12
13
14

| | |
|---|---|
| JESSE KALBERER, | 2:13-CV-2278 JCM (NJK) |
| Plaintiff(s), | |
| v. | |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | |
| Defendant(s). | |

15

**ORDER**

16      Presently before the court is a motion for summary judgment filed by defendant American

17  Family Mutual Insurance Company ("American Family"). (Doc. # 26). Plaintiff Jesse Kalberer filed

18  a response in opposition (doc. # 46), and American Family filed a reply (doc. # 62).

19      Also before the court is a motion for relief pursuant to Federal Rule of Civil Procedure 56(d)

20  filed by plaintiff. (Doc. # 47). American Family filed a response in opposition (doc. # 63), and

21  plaintiff filed a reply (doc. # 67).

22  **I.      Background**

23      Plaintiff was insured by American Family under a family automobile policy. (Doc. # 26 at

24  p. 4). The policy provided a limit of $100,000 for bodily injury per individual. (Doc. # 26 at p. 4).

25      On May 28, 2008, plaintiff was involved in a car accident with Eileen Mendiola

26  ("Mendiola") and Mendiola's passenger, Rosa Siguenza. (Doc. # 26 at p. 4). The next month,

27  American Family received letters of representation from Adam S. Kutner and Associates as

28

**James C. Mahan**
**U.S. District Judge**

representatives of Mendiola. (Doc. # 26 at p. 5). On June 25, 2009, American Family received a demand from Mendiola which requested the full $100,000 policy limit in order to settle the claim. (Doc. # 46 at p. 2). After this demand was rejected, Mendiola filed a lawsuit against plaintiff and American Family in Nevada State Court on August 24, 2009. (Doc. # 26 at p. 6).

American Family disputed liability for Mendiola's injuries based on its belief that some of the alleged injuries predated the accident. (Doc. # 26 at p. 8). Additionally, American Family believed that Mendiola had overstated her medical expenses. (Doc. # 26 at p. 8).

American Family sent several updates to plaintiff, including a warning which stated "[s]hould the damages awarded to [Mendiola] exceed the coverage limit provided under [plaintiff's] policy of insurance with American Family [], [plaintiff] may be held personally liable for the amount in excess of those limits." (Doc. # 46-9). As a result, plaintiff emailed American Family and requested that the case be settled for the policy limit so that he would not personally be held liable. (Doc. # 46 at p. 6).

Throughout the litigation, American Family's counsel sent several status updates to American Family advising that an adverse damage award as high as $350,000.00 could result from Mendiola's claims. (Doc. # 46 at p. 5). In January 2013, counsel for American Family advised that exposure was potentially as high as $600,000.00. (Doc. # 46 at p. 15).

On March 25, 2010, Mendiola sent American Family an offer of judgment for $99,999.00 in order to settle the lawsuit. (Doc. # 26 at p. 7). American Family allowed this offer to expire. On September 24, 2010, American Family sent an offer of judgment for $76,000.00, which Mendiola subsequently allowed to expire. (Doc. # 26 at p. 10). At the conclusion of the state court litigation, a jury issued a verdict against plaintiff for $338,477.03. (Doc. # 26 at p. 11).

American Family settled claims with Mendiola and others involved in the state court litigation for $500,000.00 before a judgment was entered. (Doc. # 26 at p. 11). A stipulation and order to vacate the state court judgment was approved by the state court on February 14, 2014. (Doc. # 26 at p. 11).

Plaintiff initially filed the instant suit against American Family in Clark County, Nevada on October 18, 2013. (Doc. # 1-1). American Family subsequently removed to this court. In the instant

James C. Mahan
U.S. District Judge

- 2 -

1  suit, plaintiff alleges claims for (1) breach of contract, (2) bad faith, and (3) violations of Nevada's

2  Unfair Claims Practices Act, all arising out of American Family's refusal to settle the state litigation

3  within the policy limits. Plaintiff's complaint also includes a request for punitive damages.

4  **II.    Legal Standard**

5        The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,

6  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

7  show that "there is no genuine issue as to any material fact and that the movant is entitled to a

8  judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to

9  isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

10  (1986).

11        In determining summary judgment, a court applies a burden-shifting analysis. "When the

12  party moving for summary judgment would bear the burden of proof at trial, it must come forward

13  with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

14  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue

15  of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213

16  F.3d 474, 480 (9th Cir. 2000) (citations omitted).

17        In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

18  moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

19  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

20  make a showing sufficient to establish an element essential to that party's case on which that party

21  will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party

22  fails to meet its initial burden, summary judgment must be denied and the court need not consider

23  the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

24        If the moving party satisfies its initial burden, the burden then shifts to the opposing party

25  to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

26  *Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing

27  party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

2  of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

3  Cir. 1987).

4  　　　　In other words, the nonmoving party cannot avoid summary judgment by relying solely on

5  conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045

6  (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

7  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

8  for trial. *See Celotex Corp.*, 477 U.S. at 324.

9  　　　　At summary judgment, a court's function is not to weigh the evidence and determine the

10  truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*,

11  477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable

12  inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is

13  merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at

14  249–50.

15  **III.　Discussion**

16  　　　*A.　American Family's Motion to Dismiss*

17  　　　　As an initial matter, the court acknowledges that plaintiff has withdrawn his breach of

18  contract claim as a result of American Family having settled the lawsuit with Mendiola. (Doc. # 46

19  at p. 24). Plaintiff's second claim, for bad faith, alleges that by refusing to settle with Mendiola

20  before trial, American Family breached the implied covenant of good faith and fair dealing. (Doc.

21  # 46 at p. 20).

22  　　　　Even without a violation of the express terms of a contract, a party can be liable for violating

23  the implied covenant of good faith and fair dealing when it "deliberately contravenes the intention

24  and spirit of the contract." *Morris v. Bank of Am. Nevada*, 886 P.2d 454, 457 (Nev. 1994) (citing

25  *Hilton Hotels v. Butch Lewis Productions*, 808 P.2d 919, 922–23 (Nev. 1991)). This implied

26  covenant is implicitly built into every contract, and requires that parties "act in a manner that is

27  faithful to the purpose of the contract and the justified expectations of the other party." *Morris*, 886

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

1   P.2d at 457 (internal quotation marks omitted).

2       An insurance company violates the covenant of good faith and fair dealing when it denies

3   or delays payment on a valid claim "with knowledge that there is no reasonable basis for its

4   conduct." *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996). Therefore, in order for this

5   claim to withstand summary judgment, plaintiff must present evidence from which a reasonable

6   person could conclude that (1) there was no reasonable basis for defendant's refusal to pay the policy

7   limit prior to trial and (2) defendant *knew* that there was no reasonable basis for this action.

8       Courts in this district have previously held that an insurance company's refusal to accept a

9   policy-limit settlement offer within an arbitrary time span designated by a plaintiff does not

10  necessarily constitute bad faith. *Hicks v. Dairyland Ins. Co.*, 2010 WL 2541175, *9 (D. Nev. 2010)

11  *aff'd*, 441 F. App'x 463 (9th Cir. 2011); *AAA Nevada Ins. Co. v. Chau*, 808 F. Supp. 2d 1282, 1287

12  (D. Nev. 2010) *aff'd in part, dismissed in part on other grounds sub nom. AAA Nevada Ins. Co. v.*

13  *Chau*, 463 F. App'x 627 (9th Cir. 2011).

14      Here, Mendiola's first policy-limit demand occurred before litigation had even commenced.

15  The second demand was sent eight months after Mendiola's claim was filed, and over three years

16  before trial began. Although American Family refused to settle Mendiola's claim for the policy limit,

17  it defended the suit on behalf of plaintiff during the entire course of the state court proceedings.

18      Even though the jury returned a verdict against plaintiff in Mendiola's suit, this alone does

19  not demonstrate that American Family acted in bad faith. American Family has provided significant

20  evidence showing that declining Mendiola's offers to settle for the policy limit was not an

21  unreasonable course of action. While American Family's counsel did advise that an adverse jury

22  verdict could *potentially* result in liability beyond the coverage limit, the same counsel also predicted

23  that a jury verdict of only $20,000.00 was possible. (Doc. # 46 at p. 13).

24      Plaintiff has failed to provide substantial evidence supporting elements essential to his bad

25  faith claim. Indeed, American Family's evidence shows that declining Mendiola's offer to settle

26  within the policy limit was reasonable. Viewing the evidence available at the time, American family

27  reasonably believed Mendiola's injuries were partially pre-existing and that her medical costs had

28

James C. Mahan
U.S. District Judge

- 5 -

been overstated. Plaintiff's observation, made with the full benefit of hindsight, that a policy-limit settlement would have been more favorable, does not speak to the reasonableness of American Family's actions at the time the state court action was still pending. Therefore, plaintiff's claim of bad faith will not survive summary judgment.

Plaintiff's third claim alleges that American Family violated the Nevada Unfair Claims Practices Act as set forth in NRS 686A.310. The complaint asserts six different violations of the act:

> (1) Failing to acknowledge and act reasonably and promptly upon communications with respect to claims arising under insurance policies; (2) Failing to effectuate prompt, fair and equitable settlement of claims in which the liability of the insurer has become reasonably clear; (3) Compelling the insured to institute litigation to recover amounts due under the insurance policy and/or offer substantially less than the amounts ultimately recovered in actions brought by such insured, when the insured has made claims for amounts reasonably similar to the amount ultimately recovered; (4) Failing to provide promptly to the insured a reasonable explanation of the basis of the insurance policy, with respect to the facts of the insurance claim and the applicable law for the delay and denial of her claim for an offer to settle and denial of her claim for an offer to settle and compromise her claim; (5) Failing to adopt and implement reasonable standards for the prompt investigation and processing claims arising under their insurance policy; (6) Failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy, in order to influence settlements under other policies of insurance.

(Doc. # 1-1 at p. 9).

As with the bad faith claim, plaintiff's argument is based on entirely on the premise that American Family's refusal to settle for the policy limit was unreasonable. Plaintiff has failed to provide evidence showing that American Family's estimate of the value of Mendiola's claims was unreasonable rather than merely incorrect. Therefore, plaintiff's claim for violation of the Nevada Unfair Claims Practices Act will not survive summary judgment.

B.     *Plaintiff's Motion for Relief Pursuant to FRCP 56(d)*

Plaintiff has filed a separate motion which requests the court to deny American Family's motion for summary judgment until the close of discovery. (Doc. # 47 at p. 3). However, the discovery deadline passed on August 11, 2014, and plaintiff has not provided any additional evidentiary support for his claims.

James C. Mahan
U.S. District Judge

- 6 -

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that American Family's motion for summary judgment (doc. # 26) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for relief pursuant to Federal Rule of Civil Procedure 56(d) (doc. # 47) is DENIED. The clerk is instructed to enter judgment accordingly and close the case.

DATED August 19, 2014.

_____
**UNITED STATES DISTRICT JUDGE**